UNITED STATES of America, Appellee,

v.

Merrell SCHOENROCK, Appellant.

UNITED STATES of America, Appellee,

v.

Jody COON,* Appellant.

Nos. 88-1713, 88-1715.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1988.

Decided Feb. 22, 1989.

* a/k/a Mary Jo Coon Schoenrock.

Calvin D. Hansen, Lincoln, Neb., for appellant.

Michael P. Norris, Asst. U.S. Atty., Omaha, Neb., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and STUART[**], Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

Merrell Schoenrock and Jody Coon appeal from a district court[1] order revoking their probation and requiring them to resume serving prison sentences received for violating drug laws. Both Schoenrock and Coon pleaded guilty to one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. Each was sentenced to a period of imprisonment, but the district court suspended all but six months of each sentence, imposing special conditions of probation for three years. These conditions included refraining from the use or possession of alcoholic beverages or controlled substances, successfully completing counseling or treatment programs for drug and alcohol use, submitting to random chemical testing to determine the presence of alcohol or controlled substances, and submitting to random searches of their premises, vehicles, and persons, with or without a warrant, to determine the presence of alcoholic or controlled substances. A warrantless search of the Schoenrock residence on January 1, 1988 uncovered beer, marijuana, and other prohibited items, leading to the probation revocation. On appeal Schoenrock and Coon argue that the probation condition authorizing the warrantless search violated both the Federal Probation Act and the fourth amendment, and that the fruits of the January 1 search should have been suppressed.[2] We affirm the judgment of the district court.

At Schoenrock's sentencing hearing following his guilty plea, the district court expressed concern about his alcohol and drug problems, inquiring whether he planned to receive any treatment or rehabilitation. Schoenrock indicated that he was willing to accept professional help in overcoming his problems, and informed the court that he would do anything to prove his discontinuation of drug and alcohol use. The district court accepted Schoenrock's representations, and imposed special probation terms that, if followed, would ensure Schoenrock remained drug free for at least three years.[3] Schoenrock was released from prison and began serving his probation in early 1987. Coon, who had pleaded guilty to the same conspiracy, received a similar sentence. The two lived together while on probation.

By June of 1987 the probation office was experiencing difficulties in monitoring Schoenrock's compliance with the probation terms. On June 26, Schoenrock submitted a urine sample that was later determined to have been diluted with water. Samples obtained on July 1 and July 22 both tested positive for tetrahydrocannibinol (THC), indicating marijuana use. In all, Schoenrock

---

[**] The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

2. Coon also argues that her sentence was unduly harsh, given the impending birth of her child. We find no abuse of discretion by the district court.

3. The conditions imposed included the following:

(3) That he attend and successfully complete any counseling or treatment programs for drug and alcohol use recommended by his supervising probation officer.

(4) That he be subject to search and seizure of his premises, vehicle or person, day or night, with or without a warrant, at the request of his supervising probation officer to determine the presence of alcoholic beverages or controlled substances. The probation officer may invoke this with or without the cooperation of law enforcement officers.

(5) That he shall not use or possess alcoholic beverages or controlled substances except medication prescribed by a physician.

(6) That he shall submit to chemical testing at the request of the supervising probation officer to determine the presence of alcohol or controlled substances in his body fluid.

tested positive for THC seven times during his probation. He did not, however, test positive from July 22 until the revocation of his probation.

Other events deepened the suspicions of probation officials that Schoenrock was not complying with his probation conditions. He had been arrested for smuggling marijuana into the work release center that he was confined to following his conviction. Disregarding the advice of his probation officer, he failed to complete after-care treatment for his drug problem. Probation Officer Connor testified he was dishonest with his family counselor, and evasive concerning his living arrangements. Finally, Schoenrock entered a liquor store a few days before New Year's Eve, although only to purchase a can of soda. Convinced that Schoenrock was violating his probation, the officers placed his name on a list of probationers to be examined on New Year's Day.

The probation officers conducted a thorough search of the residence shared by Schoenrock and Coon on the morning of January 1, 1988. No warrant was obtained; the officers relied on the special probation terms as authority for the search. Nineteen and one-half cans of beer, a bottle of tequila, marijuana, a syringe containing cocaine residue, an empty tequila bottle, empty wine cooler bottles, and three empty beer cans were confiscated. Schoenrock was unable to produce a urine sample, and failed to comply with requests to have his blood tested.

As a result, the officers filed petitions for revocation of probation against both Schoenrock and Coon. Each filed a motion to suppress the fruits of the search. The district court denied these motions, holding that the exclusionary rule does not apply in probation revocation hearings, and alternatively that the search was reasonable for fourth amendment purposes because it was conducted pursuant to the special probation terms. The district court revoked the probation of both Schoenrock and Coon, and this appeal followed.

■ Schoenrock and Coon first argue that the Federal Probation Act, 18 U.S.C. § 3651 *et seq.*, does not authorize probation terms that allow unrestricted warrantless searches. "The test for validity of probation conditions, even where 'preferred' rights are affected, is whether the conditions are primarily designed to meet the ends of rehabilitation and protection of the public." *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir.1988). Sentencing judges are given wide discretion in setting terms of probation, subject only to the requirement that the terms imposed be reasonably related to the rehabilitation and protection goals. *See United States v. Tonry*, 605 F.2d 144, 148 (5th Cir.1979).

■ In this case, we have little difficulty in concluding that the probation conditions were reasonably related to rehabilitation and protection. The district court made careful findings that alcohol and substance abuse was a significant cause of Schoenrock's antisocial behavior, and carefully crafted the disputed terms so as to help Schoenrock change his ways while at the same time protecting the community.[4] We

4. The district court's reasons for imposing the conditions were as follows:

Whatever can be said about some kind of reasonableness, if there is any standard at all of reasonableness, I think that standard has to be fashioned in the particular case based upon the goals that are sought in the particular probation. Here I can say without the slightest hesitation that the broad special condition was placed very deliberately, very thoughtfully, not as a routine matter, for the purpose of providing a tight control and initiative for Mr. Schoenrock's awareness that he must be free of any controlled substance or alcohol and that an assurance to him that it would be expected that any time, day or night, with or without a warrant, the probation offi-

cer might appear, would be a special assistance to him in staying free of both the possession and use of intoxicating beverages and drugs. I thought he was in need of that kind of close supervision, and I thought he needed that special control in order to assist him in a successful probationary period and rehabilitation. My primary goal was to find some way to set him free of this tendency that he had shown by the crime that he had committed. There, of course, is also the element in any probationary situation, and in this one there certainly was, of safety to society, I want society to be free of any criminal tendencies that Mr. Schoenrock has. It therefore was with those thoughts in mind that I wanted Mr. Schoenrock to be very carefully and tightly

are satisfied that these conditions, while broad, were necessary, and that without them the district court undoubtedly would have required Schoenrock to serve additional time in prison. *Cf. United States v. Williams*, 787 F.2d 1182, 1185–86 (7th Cir. 1986) (per curiam) (requirement to submit to random urinalysis testing narrowly tailored to prevent future drug use).

While Schoenrock points to cases where similar probation terms have been found overbroad, such as *United States v. Consuelo–Gonzales*, 521 F.2d 259 (9th Cir.1975) (en banc) and *United States v. Jeffers*, 573 F.2d 1074 (9th Cir.1978) (per curiam), these cases are distinguishable. In *Consuelo–Gonzales*, for example, the Ninth Circuit found a probation term to be overbroad because it "literally [permitted] searches which could not possibly serve the ends of probation." *Consuelo–Gonzales*, 521 F.2d at 265. By contrast, in this case any searches carried out pursuant to the probation terms were to serve the intended purpose of preventing Schoenrock from using alcohol or controlled substances, and were authorized with this carefully limited purpose articulated by the district judge. The record shows that only one search was actually carried out under the probation terms, and then only after Schoenrock had acted so as to arouse the suspicions of the probation officers. This demonstrates that Schoenrock was not a victim of harassment, which was a concern in *Consuelo–Gonzales*.

■ Moreover, even if we were to assume that the probation terms were facially overbroad, following *Jeffers* we could still uphold the search terms as they were applied. "[W]here [overbroad search] authority is narrowly and properly exercised, the search will be upheld." *Jeffers*, 573 F.2d at 1075. Whatever the scope of the probation terms in the present case, the probation office acted reasonably in applying them. Schoenrock aroused suspicions by diluting his urine sample, submitting

positive samples, smuggling drugs into his work release center, failing to cooperate in his treatment programs, and by visiting a liquor store. Only after all these events occurred did the probation officers exercise their power to search Schoenrock's residence. Given these reasonable grounds for conducting the search, the Federal Probation Act could not have been violated.

■ Schoenrock and Coon next argue that even if the search was valid under statutory law, it was unreasonable for fourth amendment purposes. To support this proposition they cite *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) and *United States v. Rea*, 678 F.2d 382 (2d Cir.1982). We find nothing in these cases to suggest that the search at issue here was unreasonable.

Probationers do not receive "the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions." *Griffin*, 107 S.Ct. at 3168 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed. 2d 484 (1972)). In *Griffin*, the Supreme Court upheld a Wisconsin regulation that applied to all probationers in the state, essentially allowing warrantless searches when officers had "reasonable grounds" to believe that a violation had occurred. The Court justified this decision by pointing out special factors that made a warrant requirement impractical within the special needs of Wisconsin's probation system. These factors included the delay involved in obtaining warrants, the reduction of deterrence involved in adding a warrant requirement, and the necessity of close monitoring of probationer behavior. *Id.* 107 S.Ct. at 3169. Thus, *Griffin* stands for the proposition that reasonableness for probationary searches may be established by statute, rather than by warrant.

Similar logic allows the reasonableness of searches to be determined by the careful findings of a sentencing court. *See Owens*

supervised and I thought that required special freedom on the part of the probation officers to make searches, so I in no way back away from that condition. It was very deliberate,

very careful, and I intended it to be utilized by the probation officers.
Transcript of Suppression Hearing at 40–41.

*v. Kelley,* 681 F.2d 1362, 1366–69 (11th Cir.1982). Unlike the general search terms approved in *Griffin,* a sentencing judge is able to narrowly tailor probation terms to fit the needs of a particular individual. *Cf. Griffin,* 107 S.Ct. at 3171 ("The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances"). Here the district court carefully evaluated the particular needs of Schoenrock, and concluded that only the disputed special conditions would suffice to ensure compliance with the other probation terms. *Griffin* compels us to hold that the district court's findings leading to the imposition of the special search conditions were sufficient to make those conditions reasonable for fourth amendment purposes.[5]

Finally, both parties ask us to consider whether the exclusionary rule is applicable in probation revocation hearings. Our earlier cases indicate that it is not, *see, e.g., Schneider v. Housewright,* 668 F.2d 366, 367–68 & n. 4 (8th Cir.1981); *United States v. Frederickson,* 581 F.2d 711, 713 (8th Cir.1978), but the issue has produced a circuit split. *Compare United States v. Bazzano,* 712 F.2d 826, 829 (3d Cir.1983), *cert. denied sub nom. Mollica v. United States,* 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984) (refusing to apply rule) *with United States v. Workman,* 585 F.2d 1205, 1211 (4th Cir.1978) (adopting the rule). Because we hold the search here to be reasonable, we need not reach this question.

We affirm the judgment of the district court.

---

**5.** *United States v. Rea,* 678 F.2d 382 (2d Cir. 1982), by contrast, ruled unconstitutional a warrantless search carried out by a probation officer in the absence of a probation term authorizing such a search. At least one circuit, however, has allowed such a search if the probation officer reasonably believed the search to be necessary to carry out the purposes of the probation. *See United States v. Duff,* 831 F.2d 176, 179 (9th Cir.1987).