UNITED STATES of America, Appellee,

v.

Gerard P. KILLS ENEMY, Appellant.

No. 92–3960.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1993.

Decided Sept. 2, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 18, 1993.

Frank A. Bettmann, Rapid City, SD, argued, for appellant.

Steven Douglas Rich, Rapid City, SD, argued (Kevin V. Schieffer and Steven D. Rich, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Gerard Kills Enemy appeals his conviction for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1) (1988). While Kills Enemy was subject to a pre-sentence release order relating to another conviction, FBI agents and tribal police on the Oglala Sioux Reservation searched his home, relying on a provision of the presentence order granting unrestricted authority to conduct warrantless searches. During the search they found the cocaine in issue here. Kills Enemy claims the warrantless search provision of the presentence release is invalid. He also complains of Fed.R.Evid. 404(b) evidence admitted at trial, and of the government's use of a venireman as a witness at trial. We affirm the judgment of the district court.[1]

Kills Enemy pleaded guilty to possession of marijuana with intent to distribute on January 31, 1992. At the time of his arraignment on the marijuana charge, he was released under an order which included a condition permitting unrestricted warrantless search of his person or place of residence. Between the time of the plea and sentencing, Kills Enemy's bond was continued under the same conditions as those of the pretrial release order.

On March 4, after receiving information that Kills Enemy was dealing drugs, FBI agents and tribal police officers searched the house where Kills Enemy was living. While agents were searching Kills Enemy's toolbox, Kills Enemy put his hand in the box and "palmed" a package, which turned out to contain eight bindles of cocaine. Police also found other items in the house that appeared to be paraphernalia associated with cocaine and marijuana, and a letter to Kills Enemy proposing a trade of marijuana cigarettes for marijuana seeds.

Kills Enemy moved to suppress the evidence seized, but the magistrate judge[2] recommended that the court deny his motion, likening Kills Enemy's situation to that of a convict on probation or supervised release, and therefore relying on *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), *United States v. Schoenrock*, 868 F.2d 289, 293 (8th Cir.1989), and *United States v. Sharp*, 931 F.2d 1310, 1311 (8th

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

2. The Honorable Marshall P. Young, United States Magistrate Judge for the District of South Dakota.

Cir.1991). The district court followed the magistrate's recommendation.

Kills Enemy argues that the search conditions were not necessary to assure public safety as required under 18 U.S.C. § 3142(c)(1)(B)(xiv) (1988), because the release order already included a condition explicitly prohibiting Kills Enemy from using alcohol or drugs or violating any laws. This is a disingenuous argument; the prohibitions on drug use and violations of the law are not self-executing, and the search condition has an obvious relation to public safety in making it easier for police to enforce the prohibitions on drug use and other violations of law. This enhanced enforcement power gives society the extra measure of protection necessary when releasing a convicted drug merchant pending sentencing. *See* 18 U.S.C. §§ 3143 and 3142(c)(1)(B)(xiv) (1988 and Supp. III 1990).

Kills Enemy also objects to the search term as overbroad. The search condition as drafted was quite unrestricted. It might well have been narrowed to permit a search only for drugs. But even if the condition is overbroad, we may still uphold the search if the search authority was narrowly and properly exercised. *Schoenrock*, 868 F.2d at 292. Before the search, the FBI had received information that Kills Enemy had continued to deal in marijuana and cocaine after his guilty plea on the marijuana charge. His probation officer had requested a urine sample for drug testing and Kills Enemy had delayed taking the test for four or five days, long enough to purge drugs from his system. Under the circumstances, the search was not a greater intrusion than was necessary to "assure the safety ... of the community," and therefore was authorized by statute. *See* 18 U.S.C. §§ 3143, 3142(c)(1)(B)(xiv); *Schoenrock*, 868 F.2d at 292.

Kills Enemy also contends that the condition of a convicted person on presentence release is analogous to that of a pretrial releasee, not to a probationer or convict on supervised release, and consequently there is not the same justification for abridgement of his fourth amendment rights as existed in *Griffin, Schoenrock,* and *Sharp.* We reject this argument. A convicted person awaiting sentence is no longer entitled to a presumption of innocence or presumptively entitled to his freedom. *Compare* 18 U.S.C. §§ 3142(b) (presumption in favor of pretrial release) and 3143(a) (presumption of detention pending sentence). As with the parole and probation cases, there is a heightened need for close supervision of the convicted person's activities to protect society and the releasee himself, and the releasee is entitled only to a conditional liberty. *See Griffin,* 483 U.S. at 874; *United States v. Hill,* 967 F.2d 902, 908–09 (3d Cir.1992). In particular, in cases involving drugs, authorities supervising the convict "must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before [the person] does damage to himself or society." *Griffin,* 483 U.S. at 879. We consider Kills Enemy's case analogous to *Griffin, Schoenrock,* and *Sharp,* and it shall be governed by them.

Kills Enemy complains about admission under Fed.R.Evid. 404(b) of various items of "other crimes" evidence pertaining to Kills Enemy's distribution of marijuana. He complains first about testimony of John High Hawk, who had lived in the same house with Kills Enemy. Before High Hawk testified, the government stated that he would testify that he knew Kills Enemy was selling cocaine. In fact, High Hawk only testified that he had seen Kills Enemy selling marijuana. Next Kills Enemy complains about the Rule 404(b) testimony of Amos American Horse, that he had bought marijuana from Kills Enemy up to the night before Kills Enemy was arrested on the cocaine charge, and that Kills Enemy had supplied him with cocaine gratuitously. Finally, he complains about admission of the letter offering a trade of marijuana for seeds.

In all three cases the government contends that the evidence of other bad acts is relevant to show intent to distribute the cocaine. The government contends that the other crimes evidence simply shows Kills Enemy had the cocaine because he was in the drug supply business and intended to distribute the drugs. Kills Enemy contends that evidence regarding marijuana distribution is not relevant to intent to distribute cocaine.

Under Rule 404(b) evidence of other crimes committed by the defendant may be admitted if: (1) it is relevant to a material issue (in this case, intent to distribute); (2) it is similar in kind and reasonably close in time to the crime charged; (3) the other crimes are proved by a preponderance of the evidence; and (4) the probative value outweighs the prejudicial effect of the evidence. *United States v. Longbehn,* 898 F.2d 635, 639 (8th Cir.), *cert. denied,* 495 U.S. 952, 110 S.Ct. 2217, 109 L.Ed.2d 542 (1990). The trial court has broad discretion in making Rule 404(b) rulings and we may overturn its rulings only if the record shows that the evidence clearly had no bearing on the issues at trial. *Id.*

Though we may perhaps have resolved the evidentiary questions differently were they before us in the first instance, we cannot say as a matter of law that evidence of contemporaneous marijuana dealing has "no bearing" on whether the defendant intended to distribute other drugs in his possession. *See United States v. Haynes,* 881 F.2d 586, 590 (8th Cir.1989) (past operation of marijuana business relevant to intent to distribute cocaine). We cannot reverse on this ground.

Finally, Kills Enemy complains that the district court erred in permitting Amos American Horse to testify. American Horse had been a venireman, but was excused for cause when he stated that Kills Enemy was his friend and former neighbor. The government then contacted American Horse and called him as a witness.

Kills Enemy contends that it was error to permit American Horse to testify because he had served on the venire with persons who became the jurors in this case, and he may have become acquainted with them or otherwise made an impression, either favorable or unfavorable, on the jurors. Kills Enemy cites Fed.R.Evid. 606, which bars jurors from testifying.

Rule 606 is not applicable to veniremen, as opposed to jurors, and does not require us to reverse. Nevertheless, we must express our concern about the government's actions in calling American Horse to the stand. Though we have nothing but speculation in this case about the possible effect on jurors in calling a former venireman to testify, we consider this a close case. In a case with a developed record with evidence of real harm, the result might well be different.

In this case, however, we affirm the judgment of the district court.