**Sue WELLS, Administratrix of the Estate of Laverne Sanderlin, Deceased, Representing herself, Barbara Patton, John Sanderlin, Tom Sanderlin and the Estate of the Deceased; Sue Wells, Barbara Patton, John Sanderlin, and Tom Sanderlin, individually and as taxpayers of the State of Arkansas, Appellants,**

**v.**

**Woodson D. WALKER, Bobby L. Roberts, Ph.D., James L. Mason, all individually and in their official capacities as members of the Arkansas State Board of Correction; A.L. Lockhart, individually and in his official capacity as Director of the Arkansas Department of Correction; and Morris "Jit" H. Dreher and Donald H. Smith, in their capacities as members of the Arkansas State Board of Correction; and the Arkansas Department of Correction, Appellees.**

No. 87–2547.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1988.

Decided July 26, 1988.

Rehearing Denied Aug. 24, 1988.

Charles Karr, Fort Smith, Ark., for appellants.

A. Carter Hardage, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before FAGG and MAGILL, Circuit Judges, and SNEED,* Senior Circuit Judge.

FAGG, Circuit Judge.

Plaintiffs appeal the dismissal under Federal Rule of Civil Procedure 12(b)(6) of their 42 U.S.C. § 1983 action against the Director and an employee of the Arkansas Department of Correction (the Department) and members of the Arkansas State Board of Correction (the Board). *See Wells v. Walker,* 671 F.Supp. 624, 627 (E.D.Ark. 1987). We affirm.

Larry Dean Robertson was released from Department custody under an Arkansas statute authorizing the Board to accelerate the release dates of state prisoners by up to ninety days when specified prison overcrowding conditions are reached. *See* Ark.Code Ann. §§ 12–28–601 to 12–28–606

(1987). When Robertson was released, he was "provide[d] transportation * * * to the closest commercial transportation pick-up point" in conformity with state law. *See id.* § 12–29–112(b). In this instance, that pick-up point was a store operated by Laverne Sanderlin in Dumas, Arkansas, that also served as a bus station.

Plaintiffs' complaint states two buses ran through Dumas each day, one at 11:54 a.m. and the other at 6:30 p.m. According to the complaint, after Robertson was released he was given a check for twenty-five dollars and dropped off at the Dumas bus station at approximately 6:50 p.m. on April 20, 1987. Robertson did not board a bus the following morning, and at approximately 1:30 p.m., Robertson murdered Sanderlin at her store.

Plaintiffs are family and representatives of Sanderlin's estate who seek damages for Sanderlin's death under section 1983 and state law. Plaintiffs' suit is based on their claim that defendants' actions in releasing and transporting Robertson to Sanderlin's store, without a warning he was dangerous, deprived Sanderlin of her life and infringed her liberty interest in personal security in violation of her substantive due process rights.

Relying on *Harpole v. Arkansas Department of Human Services,* 820 F.2d 923, 926–27 (8th Cir.1987), the district court concluded no special relationship existed that made Robertson's conduct while a free man attributable to the state, and consequently, that Sanderlin had no constitutional right to be protected "from [Robertson's] actions once he was freed." *Wells,* 671 F.Supp. at 627. For this reason, the court granted defendants' motion to dismiss the section 1983 claim and dismissed the pendant state law claims without prejudice. *Id.* Plaintiffs did not move to amend their complaint, and they took this appeal.

■ The propriety of granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

* The HONORABLE JOSEPH T. SNEED, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

is a question of law we review de novo. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). In reviewing the district court's ruling on the motion, we must accept plaintiffs' well-pleaded allegations as true and construe the complaint and inferences reasonably drawn from it in favor of plaintiffs. *Id.* The motion should be denied "unless it appears beyond doubt * * * plaintiff[s] can prove no set of facts [that] would entitle [them] to relief." *Id.* .

Our task on this appeal is two-fold. First, we must determine if Sanderlin possessed a right arising under the fourteenth amendment to be protected by the state from harm inflicted by a third party—in this instance, a released criminal. Second, if she possessed this right, we must then decide whether defendants' conduct deprived her of it within the meaning of the due process clause.

■ Initially, we must consider defendants' argument that "there is no constitutionally mandated duty to protect one private citizen from another * * * beyond [the confines of] prison[s] or prison-like environments." *Harpole,* 820 F.2d at 927. The district court assumed *"Harpole* effectively foreclose[d] any argument for [section] 1983 liability predicated upon" a vindicable right to affirmative protection by the state. *Wells,* 671 F.Supp. at 627. We believe, however, that *Harpole*'s requirement of a prison-related environment is satisfied in this case by the transportation link between the prison and Sanderlin's store. Thus, we must consider whether plaintiffs have otherwise adequately pleaded circumstances giving rise to a right of protection in favor of Sanderlin.

As they must, plaintiffs acknowledge the general rule that members of the public at large have no constitutional right to be protected by the state against harm inflicted by third parties. *See Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982); *see also, e.g., Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *Commonwealth Bank & Trust Co., N.A. v. Russell,* 825 F.2d 12, 15 (3d Cir. 1987); *Taylor v. Ledbetter,* 818 F.2d 791, 797 (11th Cir.1987) (en banc), *petition for*

*cert. filed,* 56 U.S.L.W. 3290 (U.S. Sept. 25, 1987) (No. 87–521); *Nishiyama v. Dickson County,* 814 F.2d 277, 280–81 (6th Cir.1987) (en banc); *DeShaney v. Winnebago County Dep't of Social Servs.,* 812 F.2d 298, 301 (7th Cir.1987), *cert. granted,* — U.S. —, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988); *Ketchum v. County of Alameda,* 811 F.2d 1243, 1247 (9th Cir.1987); *Escamilla v. City of Santa Ana,* 796 F.2d 266, 270 (9th Cir.1987); *Estate of Gilmore v. Buckley,* 787 F.2d 714, 720 (1st Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986); *Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986); *Ellsworth v. City of Racine,* 774 F.2d 182, 185 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Estate of Bailey v. County of York,* 768 F.2d 503, 510 (3d Cir.1985); *Jones v. Phyfer,* 761 F.2d 642, 646 (11th Cir.1985); *Jensen v. Conrad,* 747 F.2d 185, 192–93 (4th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985); *Wright v. City of Ozark,* 715 F.2d 1513, 1516 (11th Cir.1983); *Fox v. Custis,* 712 F.2d 84, 88 (4th Cir. 1983); *Humann v. Wilson,* 696 F.2d 783, 784 (10th Cir.1983) (per curiam).

■ Circuit court decisions examining whether a particular individual, as distinguished from the general public, is entitled to protection by the state from third-party harm generally recognize that the due process clause may be implicated in the following situations: First, when a "special custodial or other relationship[ ] created or assumed by the state" exists between a particular individual and the state, *Fox,* 712 F.2d at 88; or second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have been in, *see Bowers,* 686 F.2d at 618. *See also, e.g., Taylor,* 818 F.2d at 797–98; *Nishiyama,* 814 F.2d at 280–81; *DeShaney,* 812 F.2d at 303; *Ketchum,* 811 F.2d at 1247; *Escamilla,* 796 F.2d at 269; *Estate of Gilmore,* 787 F.2d at 720–22; *Janan,* 785 F.2d at 560; *Ellsworth,* 774 F.2d at 185; *Estate of Bailey,* 768 F.2d at 509–11; *Jones,* 761 F.2d at 644–46; *Jensen,* 747 F.2d at 193–94; *Wright,* 715 F.2d at 1516; *Humann,* 696

F.2d at 784. We are in agreement with the other courts of appeals that in these situations an affirmative right to protection by the state may arise in favor of the victim of private violence.

■ With this background in mind, we must now determine if the factual allegations pleaded in plaintiffs' complaint are sufficient to invoke a constitutional claim against defendants for their failure to protect Sanderlin from harm inflicted by Robertson. We believe plaintiffs' complaint adequately pleads the basis of Sanderlin's right of protection. Plaintiffs allege defendants took action under Arkansas law to provide postrelease transportation for Robertson and to utilize Sanderlin's store as "the closest commercial transportation pick-up point." Ark.Code Ann. § 12–29–112(b). These actions had the result of placing Sanderlin, unlike members of the general public, in a unique, confrontational encounter with a person whom plaintiffs allege had exhibited violent propensities. We thus agree with the district court's assessment that "the allegations of the complaint * * * when taken as true could support a finding of a 'close relationship' * * * or the existence of a 'special danger' to [Sanderlin]" in the context of a violation of Sanderlin's due process rights. *Wells,* 671 F.Supp. at 626.

■ Having satisfied ourselves that plaintiffs' complaint adequately alleges Sanderlin possessed a right of protection secured by the fourteenth amendment, we must now decide whether defendants' conduct deprived her of that right. Based on the allegations of the complaint, we conclude defendants' conduct did not work a deprivation of Sanderlin's right within the meaning of the due process clause.

Plaintiffs rely on allegations that defendants did not discover Robertson's potential for violence because they failed to conduct an adequate background investigation before releasing him. Plaintiffs claim defendants would have given Sanderlin the warning sought in their complaint if defendants had properly screened and processed Robertson for release.

From these factual allegations and all favorable inferences drawn from them, it is evident to us plaintiffs' section 1983 action is bottomed on a claim of ordinary negligence by the defendants. The Supreme Court, however, has held that negligent conduct by government officials cannot be the source of a "deprivation" of constitutional rights for section 1983 purposes. *See Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). We do not believe plaintiffs' allegations rise to the level of charging defendants with "an abuse of power * * * [and actually allege] no more than a failure to measure up to the conduct of a reasonable person" in processing Robertson's release. *Daniels,* 474 U.S. at 332, 106 S.Ct. at 665. Therefore, it is "beyond doubt * * * plaintiff[s] can prove no set of facts [that] would entitle [them] to relief," *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986), and defendants' motion to dismiss was properly granted.

We are mindful the Supreme Court in *Daniels* left open the possibility that "something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the [d]ue [p]rocess [c]lause" for purposes of a 42 U.S.C. § 1983 action. *Daniels,* 474 U.S. at 334 n. 3, 106 S.Ct. 667 n. 3. We are not required to explore that issue here because we conclude the descriptions of defendants' conduct in the complaint belie their characterization as anything other than ordinary negligence in making the decision to release Robertson. *See Jones v. Sherrill,* 827 F.2d 1102, 1106 (6th Cir.1987) ("Negligence does not become 'gross' just by saying so."); *see also Tallman v. Reagan,* 846 F.2d 494, 495 (8th Cir.1988) (per curiam) ("[G]ross negligence * * * does not implicate the due process clause" in *Bivens*-type action.). Basically, plaintiffs' complaint is a statement that with adequate investigation and proper screening, the defendants should have known they were releasing a dangerous individual; but as we recently observed, this kind of pleading "amounts to nothing more than [articulation of] a negli-

gence standard." *Wilson v. Cross,* 845 F.2d 163, 165 (8th Cir.1988).

By our decision we intend no opinion on the strength of plaintiffs' remaining claims under state law, and we do not take lightly the circumstances surrounding Sanderlin's tragic death. As the Supreme Court stated in *Daniels:* "That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests. * * * [I]njuries caused by such negligence should generally be redressed." *Daniels,* 474 U.S. at 333, 106 S.Ct. at 666. In the context of a section 1983 cause of action, when "a government official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for compensation is *constitutionally* required.' " *Id.* (quoted citation omitted) (emphasis in original).

The district court's dismissal of plaintiffs' complaint is affirmed.